**UNITED STATED DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **EDWARD SIPERAVAGE** )<br>**on behalf of himself and all others** )<br>**similarly situated,** )<br> )<br>**Plaintiff,** )<br> )<br>**v.** )<br> )<br>**UBER TECHNOLOGIES, INC.,** )<br> )<br>**Defendant.** )<br> )<br> )<br> ) | **No. 20-**<br><br>**JURY TRIAL DEMANDED**<br><br>**CLASS ACTION** |

## COMPLAINT – CLASS ACTION

### I.     Preliminary Statement

1.      Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated for damages arising from Defendant Uber Technologies, Inc. (Uber)'s unfair business practices related to restrictions on vehicles eligible to be used by the drivers Uber employs.   Specifically, this case deals with Uber's refusal to honor its representations that particular vehicles could be used to drive for the more-selective Uber BlackSUV platform, causing Plaintiff and similarly affected drivers to lose hundreds or thousands of dollars in income.

### II.     Jurisdiction and Venue

2.      Jurisdiction of the Court arises under 28 U.S.C. §§ 1332(a)(1); 28 U.S.C. § 1332(d)(2).

3.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### III.    Parties

4.      Plaintiff Edward Siperavage is an adult individual and citizen of the State of New Jersey who resides in Cherry Hill, New Jersey.

5.      Defendant Uber Technologies, Inc. is a corporation which regularly conducts business in the State of New Jersey, and has a principal place of business at 1455 Market Street, 4th Floor, San Francisco, California, 94103.

### IV.    Factual Allegations

*Uber's Operations*

6.      Uber's business is based upon the operation of its mobile platform (or "app") which connects its drivers to passengers who request rides through the platform.

7.      Uber pays drivers based upon completed rides, calculating the payment amount using a variety of factors including distance traveled, location, and level of demand. *See* https://www.uber.com/us/en/drive/driver-app/.

8.      Uber drivers have the traditional role of employees, because Uber maintains a high degree of control over the conduct of its drivers' work. Uber exercises that control in a number of ways, including but not limited to: (a) Uber dictates the rates drivers charge, and controls the manner in which they are paid; (b) Uber prohibits drivers from engaging and transporting these same passengers separately from the Uber platform; (c) Uber penalizes drivers for rejecting potential rides, requires drivers to accept potential rides without knowing the passenger's destination and does not permit drivers to cancel rides once the destination is revealed; and (d) Drivers are not permitted to control the route driven – if they select a route that Uber deems "inefficient," the driver is penalized through a retroactive "fare adjustment."

9.     Uber drivers regularly engage in interstate commerce by transporting passengers across state lines - by picking up a passenger in one state, and dropping the passenger off in a different state.

10.    This is particularly true of Uber drivers based in New Jersey, because New Jersey is a small state immediately adjacent to large population centers in other states, including New York City and Philadelphia.

11.    Further, Uber drivers based in New Jersey regularly transport drivers to or from some of the busiest airports in the United States located in or near New Jersey, including Newark International Airport and John F. Kennedy International Airport.

12.    Upon information and belief Uber maintains detailed records regarding locations where passengers are picked up and dropped off for each ride, and is able to determine based upon these records whether a particular driver has picked up a passenger in one state and dropped them off in a different state.

13.    Furthermore, Uber maintains detailed records regarding how much each driver is paid.

14.    An additional way Uber controls the conduct of its drivers' work is by controlling the make, model, and year of vehicles which can be used for transporting passengers.

15.    Uber offers a variety of service levels based largely on the type of vehicle used. For example, in New Jersey, Uber offers UberX, UberComfort, UberXL, UberBlack, and Uber BlackSUV.

16.    Uber maintains specific requirements regarding the make, model, and year of vehicles which drivers can use to provide rides for each service level.  For example, eligible

vehicles for the UberX level include "most newer cars" that meet certain criteria. *See* https://www.uber.com/drive/new-jersey/vehicle-requirements/

17.     Drivers are able to earn more per ride when a ride takes place on a higher service level – a driver will earn more money for a trip if it takes place through UberBlack than by driving an identical trip for UberXL.

18.     The highest available service level is Uber BlackSUV, which Uber promotes as a "luxury," "high-end vehicle service." Drivers with vehicles approved for Uber BlackSUV earn the most of the available service levels.

19.     Uber publicizes its vehicle requirements for each service level, including specifically listing the eligible vehicles for the UberBlack and Uber BlackSUV levels, on its website.  Uber also communicates these requirements directly to drivers upon request.

20.     Uber intends for drivers to rely on its representations about eligible vehicles, including by offering lease and purchase assistance for drivers seeking to obtain access to an eligible vehicle.  *See* https://www.uber.com/us/en/drive/vehicle-solutions/.  *See also* https://www.marketplace.org/2015/05/13/uber-drivers-struggle-pay-subprime-auto-loans/.

21.     Uber, however, does not adhere to these representations, and instead unilaterally changes the requirements, exacting serious consequences on the drivers who have relied upon existing vehicle eligibility standards.

22.     In September 2019, Uber changed its requirements for vehicle eligibility for Uber BlackSUV, removing the Acura MDX, Audi Q7, Chevrolet LTZ, Chevrolet Tahoe, Ford Expedition (non-Platinum series), Infinity QX60, Mercedes GL Class, Nissan Armada, and Toyota Sequoia from eligibility.

23.     Importantly, Uber did not simply stop accepting new registrations of such vehicles for Uber BlackSUV – it cut off all drivers using these vehicles from the ability to offer rides at the Uber BlackSUV level, restricting them to lower (and lower-paying) levels of service.

24.     Upon information and belief, Uber's unilateral changes in vehicle eligibility standards have affected numerous drivers based in New Jersey.

*The Experience of Plaintiff Edward Siperavage*

25.     Plaintiff began driving for Uber in 2015, driving a Cadillac CTS to complete UberBlack trips.

26.     Plaintiff regularly picks up passengers in New Jersey and drops them off in Pennsylvania, and vice versa.  Plaintiff also regularly drives passengers between New York and New Jersey.

27.     In the spring of 2017, Plaintiff began researching options to purchase a vehicle eligible to drive for Uber BlackSUV, to increase his income.

28.     On March 25, 2017, Plaintiff communicated with Uber via a messaging function on the Uber application, asking for the list of eligible vehicles for Uber BlackSUV.

29.     On March 27, 2017, an Uber representative responded listing the following vehicles as eligible for Uber BlackSUV in New Jersey:

Acura - MDX
Audi - Q7
Cadillac - Escalade, Escalade EXT
Chevrolet - LTZ, Suburban, Tahoe
Ford - Expedition
GMC - Yukon, Yukon XL
Infiniti - QX56, QX60, QX80
Lexus - LX
Lincoln - Navigator
Mercedes-Benz - GL-Class
Nissan - Armada
Toyota – Sequoia

30.     On December 31, 2018, Plaintiff purchased a black 2017 Chevrolet Tahoe with a black leather interior (herein, "the Tahoe"), for the purpose of using to drive for Uber BlackSUV. Prior to completing the purchase he confirmed again that the vehicle was eligible for use at the Uber BlackSUV by reviewing the eligible vehicles listed on Uber's website.

31.     Plaintiff paid $71,373.96 for the Tahoe, and intended to drive for Uber BlackSUV for as long as the 2017 model year was accepted, which he understood from Uber's representations was seven years, until 2024.

32.     Plaintiff immediately began using the Tahoe to drive for the Uber BlackSUV service level.

33.     On or about August 5, 2019, Uber sent Plaintiff an email notifying him that as of September 2, 2019, a Chevrolet Tahoe would no longer be eligible for the Uber BlackSUV service level.

34.     On September 2, 2019, Plaintiff's ability to access the Uber BlackSUV service level through the Uber app was terminated.

35.     Since September 2, 2019, Plaintiff has continued to drive the Tahoe for the UberBlack service level.  Although he continues to complete approximately the same number and type of trips, without the higher rate available for Uber BlackSUV trips, Plaintiff's earnings from Uber are reduced by more than $200 per month.

36.     As a result of Uber's conduct, Plaintiff suffered damages, including without limitation and by example only: loss of revenues, loss of employment opportunity, embarrassment, humiliation, and other emotional and mental distress.

37.     At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices.

38.     At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

### V.   Class Action Allegations

39.     Plaintiff brings this action on behalf of the following Class of consumers:

All natural persons with an address in the State of New Jersey who, beginning six (6) years prior to the filing of this Complaint and continuing through the conclusion of this action, (i) drove an eligible Acura MDX, Audi Q7, Chevrolet LTZ, Chevrolet Tahoe, Ford Expedition (non-Platinum series), Infinity QX60, Mercedes GL Class, Nissan Armada, Toyota Sequoia, and/or any other vehicle which was previously approved through Uber's Uber BlackSUV service level, and (ii) Defendant terminated the person's access to the Uber BlackSUV service level following a change to vehicle eligibility requirements.

40.     The Class members are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the Class members minimally numbers in the hundreds.

41.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  The principal questions concern whether Uber breached its obligations to Class members created by contract or promise, or the covenant of good faith and fair dealing, and whether members of the Class are entitled to actual damages in the form of lost earnings.

42.     Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

43.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is committed to vigorously litigating this matter.  Further, Plaintiff has secured counsel who are experienced in handling consumer class actions.  Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

44. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

45. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class's claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be derived from Defendant's records.

**COUNT ONE**
**Breach of Contract**

46. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

47. Plaintiff and Defendant are parties to a contract regarding the use of the Uber platform, including terms regarding eligible vehicles stating that Acura MDX, Audi Q7, Chevrolet LTZ, Chevrolet Tahoe, Ford Expedition (non-Platinum series), Infinity QX60, Mercedes GL Class, Nissan Armada, Toyota Sequoia and/or other vehicles of an appropriate model year could be used be in connection with the Uber BlackSUV service level.

48. Defendant breached the contract between the parties by removing prohibiting drivers registered with otherwise-eligible Acura MDX, Audi Q7, Chevrolet LTZ, Chevrolet Tahoe, Ford Expedition (non-Platinum series), Infinity QX60, Mercedes GL Class, Nissan Armada,

Toyota Sequoia and/or other vehicles of an appropriate model year from accepting and completing rides on the Uber BlackSUV service level.

49.     The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff and the Class that are outlined more fully above and, as a result, Defendant is liable to the Plaintiff and the Class for the full amount of actual damages, as well as such further relief, as may be permitted by law.

## COUNT TWO
### Promissory Estoppel

50.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

51.     In its business dealings with Plaintiff and other drivers in the State of New Jersey, Uber repeatedly made binding representations or promises stating that Acura MDX, Audi Q7, Chevrolet LTZ, Chevrolet Tahoe, Ford Expedition (non-Platinum series), Infinity QX60, Mercedes GL Class, Nissan Armada, Toyota Sequoia and/or other vehicles of an appropriate model year were eligible to be used in connection with Uber's Uber BlackSUV service level.

52.     Uber made these representations or promises with the intent that Plaintiff and other New Jersey-based drivers would rely on them in selecting vehicles to use on the Uber platform.

53.     Plaintiff and other New Jersey-based drivers reasonably relied upon Uber's representations and promises regarding vehicle eligibility in selecting vehicles.

54.     Plaintiff and other drivers who so relied upon Uber's vehicle eligibility representations for Uber BlackSUV experienced substantial detriment in the form of lost earnings after Uber, in spite of its promises to the contrary, prohibited drivers with otherwise eligible Acura MDX, Audi Q7, Chevrolet LTZ, Chevrolet Tahoe, Ford Expedition (non-Platinum series), Infinity

QX60, Mercedes GL Class, Nissan Armada, Toyota Sequoia and/or other vehicles from accessing the Uber BlackSUV service level.

55.     The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff and the Class that are outlined more fully above and, as a result, Defendant is liable to the Plaintiff and the Class for the full amount of actual damages, as well as such further relief, as may be permitted by law.

## COUNT THREE
### Breach of the Covenant of Good Faith and Fair Dealing

56.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

57.     The agreement between Plaintiff and Defendant regarding access to the Uber platform contained an implied covenant of good faith and fair dealing.

58.     By, contrary to its prior representations, terminating the ability of Plaintiff and other drivers of otherwise eligible Acura MDX, Audi Q7, Chevrolet LTZ, Chevrolet Tahoe, Ford Expedition (non-Platinum series), Infinity QX60, Mercedes GL Class, Nissan Armada, Toyota Sequoia and/or vehicles from accessing the Uber BlackSUV service level, Defendant breached the covenant of good faith and fair dealing.

59.     Defendant acted in bad faith and/or with a malicious motive to deny Plaintiff and other drivers of some of the benefit of the bargain originally intended by the parties, thereby causing Plaintiff and other drivers damages as outlined above.

## PRAYER FOR RELIEF

60.     **WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendant, based on the following requested relief:

61.     An order certifying the Class and pursuant to Fed. R. Civ. P. 23, and appointing Plaintiff and his counsel to represent them;

62.     Actual damages;

63.     Pre- and post-judgment interest;

64.     Such other and further relief as may be necessary, just and proper.

## VI.     <u>Jury Trial Demand</u>

65.     Plaintiff demands trial by jury on all issues so triable.

## VIII.     <u>Designation of Trial Counsel</u>

Plaintiff hereby designates James A. Francis and John Soumilas as trial counsel in the above-captioned matter.  Plaintiff reserves the right to amend this designation as necessary.

## IX.     <u>Arbitration Certification</u>

I, John Soumilas, counsel of record, do hereby certify pursuant to Local Civil Rule 201.1(d) that relief other than monetary damages is sought and that the damages sought are in excess of $150,000.  I further certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court.

Dated:  July 21, 2020                         Respectfully submitted,

                                              */s/ John Soumilas*
                                              JAMES A FRANCIS
                                              JOHN SOUMILAS
                                              LAUREN KW BRENNAN
                                              **FRANCIS MAILMAN SOUMILAS, P.C.**
                                              1600 Market Street, Suite 2510
                                              Philadelphia, PA 19103
                                              Tel. (215) 735-8600
                                              Fax (215) 940-8000
                                              jfrancis@consumerlawfirm.com
                                              jsoumilas@consumerlawfirm.com
                                              lbrennan@consumerlawfirm.com

                                              *Attorneys for Plaintiff and the Class*